THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD WILKINS, Defendant-Appellant.

First District (1st Division) No. 61614

Opinion filed March 1, 1976.

H. Preston Cummings, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and John T. Theis, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

After a jury trial, Ronald Wilkins was convicted of murder and sentenced to a term of 20 to 60 years' imprisonment. On appeal he raises

three issues: (1) whether he was proven guilty beyond a reasonable doubt; (2) whether the failure to instruct the jury on the offense of voluntary manslaughter was error; and (3) whether the sentence of 20 to 60 years' imprisonment was excessive.

Mrs. Johnella Davis Lyles, the mother of the decedent, Bernard Davis, was the principal prosecution witness. Mrs. Lyles testified that on May 19, 1973, Bernard and his sister left the family's apartment to go shopping. Later in the afternoon, Bernard returned home and then left again. Mrs. Lyles stood by the picture window in the front room of her first floor apartment at 3838 West Adams Street in Chicago, and watched her son walk from the premises. She observed the defendant Ronald Wilkins and Bernard engage in a fight. Mrs. Lyles saw them separate. She saw the defendant put his hand into his pocket and then heard a gunshot. Mrs. Lyles testified that she saw smoke between the two of them. Then her son ran in the direction of the house while Wilkins, with his arm outstretched, was shooting. Mrs. Lyles estimated that she heard two shots and she saw smoke coming from the end of the defendant's hand. Then the defendant turned and ran in the opposite direction.

. Mrs. Lyles sat down. At about the same time, there was a knock at the back door and she went to answer it. Her younger son came into the apartment and told her that Bernard was shot and was lying on the street. Mrs. Lyles attempted to notify the police, but they had already arrived.

On cross-examination, Mrs. Lyles testified that her view out of the front window was unobstructed. She stated that at the time her son and the defendant separated and the first shot was fired, she did not see a gun in Ronald Wilkins' hands. Mrs. Lyles also testified that when she saw Ronald Wilkins with his arm outstretched and heard two additional shots, she did not see a gun.

Answering a call at about 3:30 p.m., Officer Jim Newson testified that he arrived at the scene and observed a man lying face down in the gangway next to the Lyles' apartment building. The decedent was pronounced dead on arrival at the hospital. It was stipulated that the cause of death was a gunshot wound of the chest.

While at the hospital, Mrs. Lyles described her son's assailant to the police. She stated that he was 5 feet 9 inches tall and weighed 170 pounds. The assailant's hair was in an Afro-French braid and he wore an oyster white and medium black or dark grey pin-striped sport jacket and medium dark pants.

Officer Walter Siemieniak, a homicide investigator for the Chicago Police Department, testified that he searched the scene of the occurrence but found no bullets; nor did he ever recover a weapon. He stated that

the defendant surrendered to him at the police station about six hours after the murder. The defendant's mother accompanied him to the station. Wilkins was advised of his rights, and he told the police that he knew nothing of the incident. Mrs. Wilkins asked to be alone with her son. The officers complied with Mrs. Wilkins' request. About five minutes later, Mrs. Wilkins asked the officers to return. Ronald Wilkins then made an additional statement. Wilkins said that he met Bernard Davis on the street and that they had words which resulted in a fist fight. While the two were fighting, a shot was fired from a crowd in back of Wilkins, striking Bernard Davis.

According to Officer Siemieniak's testimony, a lineup identification procedure was conducted after the defendant was arrested. Mrs. Lyles testified that she identified the defendant from a lineup. At the time Mrs. Lyles made the identification, Officer Siemieniak testified that the defendant was wearing a white striped sport coat, dark pants and a red shirt. The defendant's hair was braided close to his head.

Officer Siemieniak further testified that the bullet recovered from Davis' body was .32-caliber. He described two .32-caliber weapons—an automatic and a revolver. A .32-caliber automatic, called a "purse gun" is easily concealed because of its size. It is 3½ to 4 inches in length, and 2 inches from the trigger to the end of the barrel. The .32-caliber revolver is a little larger than the .32-caliber automatic. He also stated that in his opinion the 2-inch barrel of the .32-caliber automatic would not be visible if the gun was held in one's hand. On cross-examination, Officer Siemieniak testified that an inspection of the bullet would not reveal the type of weapon used. Moreover, the police could not determine the length of the gun barrel from which the bullet was fired. He said that the bullet could have been fired by a "312" with a 6-inch barrel.

The defendant's first contention is that the State did not meet its burden of proving defendant's guilt beyond a reasonable doubt. Defendant argues that the testimony of the decedent's mother was inconsistent and improbable. Defendant's version of the shooting, it is urged, was not contradicted by competent evidence.

■■ It is a well-established rule that the testimony of a single witness, if positive and credible, is sufficient to sustain a conviction, even though contradicted by the accused. (*People v. Mitchell,* 22 Ill. App. 3d 817, 317 N.E.2d 779.) The defendant characterizes Mrs. Lyles' testimony as inconsistent, and thus not credible. He asserts that Mrs. Lyles testified that she saw a gun in the defendant's hand, and then, on cross-examination, she conceded that she did not see a gun. We do not agree that her references to a gun were of such a contradictory nature that they impaired her credibility as a witness. Mrs. Lyles stated that she saw the

defendant put his hand into his pocket; she heard a shot and then saw smoke coming from the end of the gun, between the defendant and the decedent. Then Mrs. Lyles stated that Ronald Wilkins continued to shoot with his arm outstretched toward her son. She testified that she saw smoke coming "away from the end of the muzzle, away from the end of his hand." The witness' only references to a gun were based on her conclusion, from what she had observed and heard, that the defendant had a gun. She was as precise as possible in relating the facts of the occurrence and did not explicitly state that she saw a gun. On cross-examination, Mrs. Lyles stated that she did not see a gun in the defendant's hand. The jury must judge the credibility of the witnesses before it and the weight to be given their testimony. (*People v. Nuccio*, 54 Ill. 2d 39, 294 N.E.2d 276.) The jury heard the testimony of Mrs. Lyles and they indicated that it was worthy of belief by finding the defendant guilty. From our examination of the witness' testimony, we conclude that the complained of inconsistencies were minor in nature and were insufficient to raise a reasonable doubt of the defendant's guilt. See *People v. Raynor*, 57 Ill. App. 2d 128, 207 N.E.2d 154 (abstract opinion).

The defendant next asserts that Mrs. Lyles' testimony that she observed the shooting but not the gun was improbable. Although there was no direct testimony that the defendant had a gun, there was ample evidence to warrant the conclusion that the defendant shot Bernard Davis. Mrs. Lyles related a detailed description of the shooting. After she first observed the two fighting, she saw the defendant put his hand into his pocket.

"Q. And after he went into his pocket what, if anything did you hear?

A. I heard the shooting of a gun.

Q. And did you see anything?

A. I saw smoke.

Q. And where did you see the smoke coming from?

A. From the end of the gun.

Q. Was that between the two of them?

A. Yes."

Then Mrs. Lyles testified that her son ran toward the house and Ronald Wilkins continued to shoot with his arm outstretched toward her son. Mrs. Lyles estimated that she heard two shots.

"Q. And did you see any smoke at that time?

A. Yes, I did.

Q. And where did you see the smoke coming from?

A. Away from the end of the muzzle, away from the end of his hand."

Mrs. Lyles' description of the shooting was detailed and suggested that the defendant had a gun in his hand. We do not consider the fact that the witness did not actually see the gun in the defendant's hand sufficient to raise a reasonable doubt of his guilt, where the evidence was overwhelming that the defendant had a weapon. It is the province of the jury to draw inferences from the evidence. (*People v. Zuniga,* 53 Ill. 2d 550, 293 N.E.2d 595.) The record shows that there was sufficient evidence from which the jury could conclude that the defendant had a gun.

The defendant also claims that Officer Siemieniak's testimony impermissibly encouraged the jury to speculate that the decedent was shot with an easily concealed weapon. Officer Siemieniak testified that the police could not determine the type or size of weapon used. He stated that a gun capable of firing a .32-caliber bullet could be as small as a .32-caliber automatic, which is 2 inches from the trigger to the end of the barrel and is not visible when held in one's hand. The defendant did not offer any evidence to contradict that statement. We believe that the jury was properly allowed to decide from the evidence presented whether the defendant shot the decedent with an easily concealed weapon. It is the province of the jury to determine factual matters in debatable sets of circumstances. (*People v. Robinson,* 3 Ill. App. 3d 858, 279 N.E.2d 515.) Whether the defendant had an easily concealed weapon was a factual matter to be ascertained by the jury.

Another argument advanced by the defendant is that Mrs. Lyles' actions after the shooting were so unlikely to be made by a concerned mother who has just seen her son shot that they indicated that Mrs. Lyles did not, in fact, observe the shooting. After the shooting, Mrs. Lyles sat down and, at about the same time, she heard a knock at the back door and attempted to answer it. Her 10-year-old son came into the apartment and told her that Bernard had been shot.

We disagree with defendant's conjecture that Mrs. Lyles did not see the shooting. The witness accurately described the defendant and identified him in a lineup identification procedure; she also related the incident in detail. The defendant's statement to the police corroborated Mrs. Lyles' testimony that he and Bernard Davis were fighting at the time of the shooting. In addition, Mrs. Lyles' actions are consistent with those of a woman who is in shock. Thus the defendant's assertion is not supportable by the evidence.

Mrs. Lyles' testimony was credible and positive. The fact that the defendant's version of the shooting was not contradicted by any evidence other than Mrs. Lyles' testimony does not raise a reasonable doubt of the defendant's guilt. The jury is entitled to weigh the testimony and

to judge the credibility of the witnesses. (*People v. Nicholls*, 44 Ill. 2d 533, 256 N.E.2d 818.) By their verdict in favor of the defendant's conviction, the jury indicated that they considered Mrs. Lyles' testimony worthy of belief and found the defendant's version of the shooting unbelievable. A jury verdict will not be set aside on review unless it is so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. (*People v. Peto*, 38 Ill. 2d 45, 230 N.E.2d 236.) Based on all the evidence, we conclude that the defendant was proven guilty beyond a reasonable doubt.

■■ Another contention advanced by the defendant is that the trial court's failure to instruct the jury *sua sponte* on the offense of voluntary manslaughter constitutes error. Neither the prosecution nor the defense tendered a manslaughter instruction. The defendant claims that the failure to give such instruction to the jury was an abuse of the trial court's discretion where there was a factual basis to support the defendant's conviction for voluntary manslaughter.

The Illinois Supreme Court, in an extensive discussion, determined that a trial court may, on its own initiative, instruct the jury on a voluntary manslaughter charge if the evidence is sufficient to sustain a conviction. (*People v. Taylor*, 36 Ill. 2d 483, 224 N.E.2d 266.) Where the defendant has not requested a manslaughter instruction and the evidence is sufficient to support a conviction on that offense, it is within the trial court's discretion to give such an instruction. However, the trial court's failure to exercise its discretion is not error. *People v. Taylor*, 36 Ill. 2d 483, 489, 224 N.E.2d 266; *People v. Roberts*, 133 Ill. App. 2d 234, 272 N.E.2d 768.

A factual basis to support a manslaughter conviction is an essential prerequisite to the existence of the trial court's discretion; thus it cannot also serve as a decisive factor in determining an abuse of discretion as the defendant claims. The defendant failed to request a manslaughter instruction; therefore, there is no error of which the defendant can complain. *People v. Meeks*, 11 Ill. App. 3d 973, 297 N.E.2d 705, *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153, 94 S. Ct. 3196.

The cases cited by the defendant in support of his position are factually inapposite to the case at bar. In *People v. Pierce*, 52 Ill. 2d 7, 284 N.E.2d 279, and *People v. Williams*, 10 Ill. App. 3d 456, 294 N.E.2d 98, the trial judge gave a manslaughter instruction over the defendant's objection. The trial court in *People v. Canada*, 26 Ill. 2d 491, 187 N.E.2d 243, refused to instruct the jury on manslaughter. In the instant case, the defendant did not request a manslaughter instruction and the trial judge did not instruct the jury on the manslaughter charge.

■■ Finally the defendant contends that the sentence of 20 to 60 years' imprisonment is excessive. The sentence should not be disturbed by a

reviewing court unless it is greatly at variance with the spirit of the laws, or is manifestly disproportionate to the nature of the offense. (*People v. Hampton*, 44 Ill. 2d 41, 253 N.E.2d 385.) A proper objective in determining the penalty in a criminal case is the restoration of the offender to useful citizenship. (Ill. Const. 1970, art. I, §11; *People v. Simmons*, 60 Ill. 2d 173, 326 N.E.2d 383.) At the time of trial the defendant was 17 years of age and had no prior criminal record. He was attending high school and would have graduated but for the occurrence. Although the nature of the crime is extremely serious, the sentence imposed does not adequately reflect the possibility of the defendant's rehabilitation. (*People v. Pantoja*, 35 Ill. App. 3d 375, 342 N.E.2d 110; *People v. Gill*, 7 Ill. App. 3d 24, 286 N.E.2d 516.) Accordingly, we modify the sentence to a minimum term of 14 years and a maximum term of 16 years pursuant to our authority under Supreme Court Rule 615(b)(4). (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4).) The judgment is affirmed as modified.

Judgment affirmed as modified.

GOLDBERG, P. J., and SIMON, J., concur.