THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE WILLIAMS, Defendant-Appellant.

First District (3rd Division)   No. 76-1632

Opinion filed April 18, 1979.—Rehearing denied May 17, 1979.

William Henning Rubin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Mary Ellen Dienes, and Jonathan Regunberg, *Assistant State's Attorneys*, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

The defendant, Clarence Williams, was indicted for aggravated battery and attempt murder. A jury in the Circuit Court of Cook County found the defendant guilty of aggravated battery and the court sentenced him to the Illinois Department of Corrections for a period of not less than two nor more than six years. On appeal, the defendant raised the following issues:

1. Whether the defendant was proven guilty beyond a reasonable doubt.

2. Whether the motion for an arrest of judgment at the conclusion of the trial should have been granted.

3. Whether the court erred in refusing to admit into evidence certain photographs offered by the defendant.

4. Whether the court should have excluded certain testimony of the people's witnesses as hearsay.

5. Whether certain statements made by the prosecutor in closing argument were improper and deprived the defendant of a fair trial.

Darnell Spann, a 14-year-old student, was shot in the arm at approximately 6:30 p.m. on November 10, 1974, while standing at an entrance to an apartment building on Oakley and Adams Streets in Chicago. Darnell and a friend, Terry Dixon, went to the building to visit an acquaintance who lived there. The boys attempted to enter the building through three separate entrances on Adams Street, but they discovered that all three doors were locked. The boys went to Oakley Avenue where they saw Steven Johnson, another friend who resides in the building, and requested Steven to climb a locked fence and to open it so they could enter the building from the rear. Steven agreed and commenced climbing the fence while Darnell and Terry stood on the city sidewalk.

Clarence Williams lived in the building and operated a grocery store in the basement. Darnell knew him by name and sight. Darnell testified that as Steven was climbing the fence, he observed Williams start up from the basement and then jump back into the basement. Darnell had no difficulty recognizing Williams because of a light shining above his head. A few seconds later, Darnell heard a shot and felt pain in his left arm. The three boys ran to Darnell's home and Darnell's mother called the police.

Terry Dixon testified that he also observed Williams at the basement door while the boys were standing at the fence. In addition, he stated that he saw the defendant step out of the door a second time with a gun in his hands. Williams pointed the gun at the boys, fired it and ran upstairs.

Officer Pappalito of the Chicago Police Department testified that he went to Darnell's home and spoke to Terry Dixon and Steven Johnson concerning the incident. He went with the boys to the scene of the shooting, but they were unable to gain entrance to the building. Officer Pappalito and his partner later returned to the building. A man responded to their knock, opened the door for them, and led the officers to the rear of the building. Officer Pappalito testified that there was a light in the doorway in the basement and one over the basement steps. Both lights were working properly. The officer stated that he discovered the defendant working on some pipes in the basement and placed him under arrest. Although the police officers searched the defendant's office, they were unable to locate a gun.

Clarence Williams testified that he has been the manager of the building located at Adams and Oakley for five years. He also performs minor maintenance work in the building and operates a small grocery store in the basement. Williams denied owning a gun and shooting Darnell Spann.

The defendant testified that on the evening of November 10 he left the apartment building at approximately 5:30 p.m. to borrow some tools to repair a leaking pipe. He drove to the home of a plumber, Frank Burnett, picked up the necessary tools and returned to his building at approximately 7 p.m. He was repairing the pipes when Shirley Johnson, a resident, brought the police officer into the basement. Subsequently, he was placed under arrest. The defendant also testified that because of a shortage in the wiring, the lights in the rear of the building were not working on the evening of November 10. In addition, he stated that the lights had not been working for four to six weeks prior thereto.

Several witnesses testified on behalf of Williams. Shirley Johnson testified that on November 10 she twice escorted two police officers to the office of the defendant. The first time Williams was not there; on the second occasion he was repairing the leak in the pipe. She also testified that the lights in the rear of the building were not working that evening.

Howard R. Weitzman, president of the Adams and Oakley Building Corporation, which is the owner of the apartment building, testified that it is impossible to see the basement door from the street because a garbage truck and a garbage chute block the view. In addition, he stated that the lighting system in the rear of the building was not working on November 10 and had not worked for several weeks.

Joyce Hayward, a cashier in the defendant's grocery store and a resident of the building, testified that on November 10 she closed the store between 5:30 and 6 p.m. She stated that the defendant left the building five or 10 minutes before she closed the store. Hayward also testified that the yard was dark when she left the store that evening.

Defendant's final witness, Frank Burnett, testified that on November 10, 1974, Williams arrived at his home at approximately 5:15 p.m. to borrow a wrench. The defendant remained at his residence for 15 or 20 minutes.

The State called as a rebuttal witness Sergeant Daniel Haydock of the Chicago Police Department. He testified that on November 10, 1974, he twice accompanied his partner, Officer Pappalito, to the Adams and Oakley building. Sergeant Haydock recalled that the basement area of the building was well lighted. He denied meeting Shirley Johnson at the apartment building and also testified that a man opened the door and led them to the back of the building.

The defendant first contends that the State failed to prove that he was

guilty beyond a reasonable doubt. He characterizes the identification made by Darnell and Terry as incredible because several witnesses testified that the lights on the building were not working on the evening of the shooting.

■■ It is the function of the trier of fact to determine the credibility of the identification witnesses and the weight to be given their testimony. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) Here, Darnell testified that he observed the defendant at the basement door a few seconds before the shooting. Terry testified that he saw the defendant aim and fire the gun at Darnell. Although several witnesses for the defendant stated that the lights were not working and therefore an identification of the assailant was impossible, Darnell, Terry and both police officers testified that the basement area lights were functioning properly. The identification of the defendant was not so incredible as to create a reasonable doubt of his guilt.

Williams also points out conflict in testimony concerning who escorted the police officers to his office. However, it is well settled that where the evidence is merely conflicting, as here, a reviewing court will not substitute its judgment for the judgment of the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. Mytnik* (1978), 66 Ill. App. 3d 624, 384 N.E.2d 435.

■ The defendant also argues that the trial court erred by refusing to grant his motion for an arrest of judgment at the conclusion of the trial. Such a motion is granted when the indictment, information or complaint does not charge an offense, or when the court is without jurisdiction of the cause. (Ill. Rev. Stat. 1975, ch. 38, par. 116—2(b).) Neither the defendant's motion filed in the trial court nor his brief filed in this court alleges either of these grounds. Therefore, the trial court properly denied his motion.

The defendant next contends that the trial court erred in refusing to admit into evidence certain photographs of the scene of the shooting taken on the day of the trial. The defendant argues that these photographs would illustrate that a man standing in the basement area could not be seen from the fence as Darnell and Terry had testified. The trial court refused to admit the photographs into evidence because the defendant had failed to comply with the discovery rules. The court also noted that there was no showing by the defendant that the conditions on the date of the trial were the same as the conditions which existed on the evening of the shooting.

■■ It is within the discretion of the trial court to determine whether a photograph should be admitted into evidence. (*People v. Hayes* (1973), 14 Ill. App. 3d 248, 302 N.E.2d 411.) The court must consider whether the photograph portrays certain facts relevant to an issue in the case and whether the photograph can be verified as a correct representation of

these facts. (*People v. Schwing* (1971), 133 Ill. App. 2d 100, 272 N.E.2d 779.) Here, the defendant offered the photographs to establish that Darnell and Terry could not have seen him step out of the basement door and shoot Darnell. However, the photographs were taken almost two years after the shooting. In addition, the photographs were taken during the morning hours while the shooting occurred in the evening. The defendant could not establish that the photographs portrayed a correct representation of the scene at the time of the shooting. For the foregoing reasons, we conclude that the trial court did not abuse its discretion in refusing to admit into evidence the photographs of the defendant.

The fourth issue raised by the defendant is whether the court erred by admitting into evidence hearsay identification testimony. Both Terry and Officer Pappalito testified that on the evening of the shooting, Terry identified the defendant as the assailant.

■ The main rationale underlying the hearsay exclusion is the opposing party's inability to subject the declarant to cross-examination and to test the veracity of his statements. (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164.) However, when, as here, the declarant is present at trial, testifies concerning the prior identification, and is subject to cross-examination, the fundamental basis of the hearsay rule is absent. *People v. Clark* (1972), 52 Ill. 2d 374, 288 N.E.2d 363; *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.

■ ■ Although this testimony was not impaired by hearsay objections, the trial court should have excluded these statements. The general rule is that the testimony of a witness in court cannot be corroborated by introducing evidence that the witness made similar statements out of court. (*People v. Clark; People v. Olmos* (1978), 67 Ill. App. 3d 281, 384 N.E.2d 853.) Although this testimony was improperly admitted into evidence, reversal is not warranted where the same matter has been proved by competent evidence. (*People v. Smith* (1978), 64 Ill. App. 3d 1045, 382 N.E.2d 298; *People v. Torres* (1974), 18 Ill. App. 3d 921, 310 N.E.2d 780.) In the present case both boys knew the defendant and often had visited his store. Terry positively identified Williams in court, and Darnell testified that he observed him seconds before the shooting. Because of the corroborating evidence, we find that the admission of the testimony was harmless error.

The defendant's final argument is that the prosecutor committed reversible error in his closing argument. While commenting on the testimony of the defense witnesses, the prosecutor stated:

"Twenty two months later all these people march in here and go up on that stand and testify falsely."

The defendant's attorney made no objection to this comment, although he did raise the issue in his post-trial motion.

■ The general rule is that failure to object to statements made in closing argument ordinarily waives any error contained in these statements. (*People v. Hampton* (1969), 44 Ill. 2d 41, 253 N.E.2d 385; *People v. Torres* (1977), 53 Ill. App. 3d 171, 368 N.E.2d 361.) In any event, a review of the closing argument convinces us that this single improper comment was not a material factor which influenced the defendant's conviction. *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

SIMON, P. J., and McNAMARA, J., concur.