THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY LOMAX, Defendant-Appellant.

First District (3rd Division)    No. 78-1110

Opinion filed October 15, 1980.

James J. Doherty, Public Defender, of Chicago (Timothy P. O'Neill, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Robert J. Kaiser, Jr., Assistant State's Attorneys, of counsel), for the People.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

Gregory Lomax, the defendant, Curtis Tarver and John Burnom were jointly indicted and charged with the offenses of theft and robbery. The

theft charges were subsequently dismissed. Tarver and Lomax were tried jointly at a bench trial. Burnom's trial was severed. At the close of the State's case Tarver's motion for a directed finding of not guilty was granted. Lomax was found guilty of robbery and sentenced to two to six years in the penitentiary.

On appeal Lomax argues: (1) the State failed to prove him guilty beyond a reasonable doubt because of vague and uncertain identification testimony; (2) the court erred in failing to suppress all identifications by the complaining witness; (3) the court erred in refusing to hold a hearing on the defendant's motion to quash his arrest; and (4) the court erred in excluding the testimony of a witness to an alleged confession by a third party to the robbery of the complainant.

Sharon Cerda, the complainant, testified that at approximately 9 p.m., on October 10, 1977, she was walking to her brother's house. She was carrying a purse with both straps over her left shoulder and her thumb was positioned inside one of the straps. As she approached 50th Street from the south on Ashland Avenue, she noticed two men walking toward her. Both men were approximately 20 years old. The taller of the two wore a long coat and hat, and the other wore a short black leather jacket and dark pants. When the complainant crossed their path, the street light on the southeast corner was about 10 feet from her. The area was illuminated with four lights, one on each corner.

When the two men reached her side the shorter of the two men "yanked" her purse from her arm causing the strap to break. Cerda testified that a struggle for the purse ensued for about two minutes and she looked, for about five seconds, into the face of the man who took her purse. When he grabbed the purse the man's face was a couple of inches from hers. Cerda identified the defendant as the man who took her purse.

The defendant ran eastbound on 50th Street with Cerda's purse, and the taller man subsequently followed in the same direction. About five seconds later Cerda saw a 1969 Cadillac, silver with a black vinyl top, occupied by only a driver, pull away from a parking space on the east side of Ashland and travel in the same direction as the two robbers. She then entered a nearby tavern to call the police and later went to the police station with Michael and Michelle McBride.

Cerda testified that while waiting at the police station she saw the police bring in three handcuffed men. She said she recognized one of the three as the defendant. Later that evening Cerda was shown four or five photographs. She recognized a picture of the defendant.

After Cerda's testimony the defense made a motion to suppress any in-court identification of the defendant by Cerda because it was the product of an improper photographic identification. The trial court conducted a hearing but denied the motion because Cerda's in-court

identification of Lomax was not based on the photographic presentation, but on her observation of him at the time of the robbery.

The State called Michael McBride who testified that he witnessed the robbery while he was stopped for a traffic light at 50th Street and Ashland, facing east on 50th Street. He testified that it took the shorter man about three seconds to take Cerda's purse. When the light turned green, McBride drove east on 50th Street to chase the two men. He saw a light-colored Cadillac with a black vinyl top pull away from the curb also heading eastbound on 50th Street. There was only one occupant in the car, the driver. McBride pursued the taller of the two men on foot and was aided by the police. The taller man, John Burnom, was apprehended and arrested.

McBride testified he then went back to Sharon Cerda and took her to the police station. He was with Cerda when three handcuffed men walked by. He said Cerda did not point out the defendant but testified that she said one of the men was the one who took her purse.

Police officer Edward Hollinger testified that he arrested John Burnom after he saw Burnom being chased by McBride. He stated he had seen Burnom and Lomax 45 minutes earlier in a 1969 black and grey Cadillac. He and his partner had stopped the car and questioned Lomax. No traffic citations were issued.

Officer Hollinger testified that after Burnom was arrested and placed in a squad car, he and his partner toured the area looking for the second man involved in the alleged robbery. In the 5100 block of South Loomis he saw a 1969 black and grey Cadillac being pushed to the curb by Lomax and Tarver and arrested both men. Lomax was wearing a black waist-length leather jacket and dark trousers. Officer Hollinger testified that when he brought Lomax into the station and led him past Sharon Cerda he did not hear her say anything.

After the State had rested, the defendant's motion for a directed finding of not guilty, based on insufficient identification, was denied. The defendant then moved for a hearing on his motion to quash his arrest. The court allowed the defendant to make an offer of proof but denied the motion because it was untimely.

Curtis Tarver, who testified for the defendant, stated that on October 10, 1977, at approximately 3 or 4 p.m., he was riding in a 1969 grey Cadillac sedan with Lomax and Burnom. He said they were stopped by the police at about 6 or 7:30 p.m. and at about 8 or 8:30 p.m. they met Emanuel Hoskins, also known as "Pinochle" at 55th Street and Ashland. Tarver testified that at about 9 p.m. the defendant stopped the car at 50th and Ashland and Burnom and "Peanut [Pinochle]" got out. He did not see Burnom and Peanut after that. Tarver said he and Lomax then headed

toward Lomax's house but that the car broke down. They pushed the car to the curb and were arrested about five minutes later.

The defense then called Calvin Miller. The State sought a ruling on its motion to exclude Miller's testimony and was allowed to question Miller to present a basis for this motion. The defense then requested a sidebar and made the following offer of proof:

> "Mr. Miller presently on the stand would testify that he had a conversation with Emanuel Hoskins on or about October 10, '77, the date of the offense. He informed Mr. Hoskins, who goes by the nickname of Pinochle, informed Mr. Miller that Lomax and Tarver were in jail for a purse snatch and that he, that is Emanuel Hoskins, is the one who took the purse and ran and got away."

The trial court barred Miller from testifying on the basis that the testimony was hearsay and unreliable.

The defendant, Gregory Lomax, then testified on his own behalf. He said that on October 10, 1977, he had been driving a 1969 sedan. At about 9 p.m. he was driving in the area of 50th and Ashland. Tarver was in the front seat and Peanut and Burnom were in the back. At this location, Peanut and Burnom got out of the car. Lomax said he drove away as soon as they closed the car door and did not see where Peanut and Burnom went. The defendant testified that the car broke down near 51st Street and Loomis. He and Tarver pushed the car to the curb and were arrested while trying to start it.

Incorporated into the defendant's case was the testimony of Chicago police officer Stanislaw Sobie, who testified during the hearing on the defendant's motion to suppress the in-court identification made by Sharon Cerda. Officer Sobie testified that he was present when the three handcuffed men were led past Cerda in the police station and that he did not hear her say anything at that time. Sobie identified the three photographs of the three handcuffed men that he showed Cerda on the night of the robbery. He said she identified the defendant. He further stated that the police report on the robbery did not mention that photographs had been presented to Cerda.

In rebuttal the State introduced evidence that the defendant pleaded guilty to a charge of burglary in 1975.

## I

The defendant's first argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt because the identification testimony of Sharon Cerda was vague and uncertain. He cites discrepancies in the testimony of Cerda and Michael McBride regarding the length of time of the robbery, the position of the two alleged robbers as they

approached Cerda, the date Cerda viewed the photographic displays and how many selections she made. The defendant also asserts that the conditions for viewing the robbers on the night of the robbery did not allow for a careful look.

Where the identification of the accused is in issue, the testimony of one eyewitness is sufficient to convict, even though contradicted by the defendant, provided the witness is credible and viewed the defendant under circumstances that would permit a positive identification to be made. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Lindsey* (1979), 72 Ill. App. 3d 764, 391 N.E.2d 382.) It is not required that the validity of the identification be based upon perfect conditions for observation or that the time for observation be of a prolonged nature. (*People v. Reed* (1980), 80 Ill. App. 3d 771, 400 N.E.2d 688.) In a bench trial, the determination of the credibility of the witnesses and the weight to be given their testimony are matters for the trial court and the reviewing court will not substitute its judgment unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to the defendant's guilt. *People v. Reed*; *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 378 N.E.2d 1318.

The trial court in the case at bar found that Sharon Cerda's in-court identification of the defendant was credible and that it was based upon her observations of the defendant at the time of the robbery. The court held that the circumstances of the lighting and the proximity of the defendant to the complainant were such that she could recognize the defendant. We agree with this determination. The complainant testified that the entire incident took about three minutes. It began when she noticed two men not more than a couple of feet away from her as she approached the corner of 50th Street and Ashland Avenue. She said it took a few minutes for them to reach her side and that she glanced at their faces as they approached. When she crossed their path a street light was about 10 feet to her left and was not shining in her face. During the struggle for her purse, she looked into the defendant's face, which was a few inches from hers, for about five seconds.

■■ On the basis of this testimony, it is more than clear that Sharon Cerda had a reasonable opportunity to view the defendant during the course of the robbery and that her identification of him was positive. We further hold that the inconsistencies in testimony discussed by the defendant do not cast doubt upon the certainty of Cerda's identification. Any discrepancies in the testimony of Michael McBride and the complainant concerning the length of time of the incident and the position of the two robbers when they reached Cerda affected the weight to be accorded their

testimony. Furthermore, those inconsistencies concerning the dates of the photographic displays viewed by Cerda and the number of selections made are irrelevant to Cerda's observation of the defendant at the time of the robbery which was the basis of her positive in-court identification.

## II

The defendant's second argument on appeal is that the trial court erred by not suppressing all identifications made by Sharon Cerda. He contends that her identifications were the fruit of an improper and suggestive pretrial photographic display and should not have been admitted into evidence.

On a motion to suppress an in-court identification, the burden of proof is on the defendant to establish that the challenged identification is the result of State procedures so suggestive as to give rise to a substantial likelihood of irreparable misidentification. (*People v. Duarte* (1979), 79 Ill. App. 3d 110, 398 N.E.2d 332; *People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947.) The defendant in the case at bar argues that the complainant's in-court identification was the result of improper and suggestive pretrial photographic identification procedures. He contends the use of the defendant's photograph was improper because a lineup should have been conducted since the defendant was in police custody at the time of the identification. He also argues that the photographic display was suggestive because Sharon Cerda was only shown three pictures, the pictures of the three men whom she had witnessed being brought handcuffed into the police station.[1]

An in-court identification is admissible regardless of the suggestiveness of pretrial identification procedures when from the totality of circumstances it is shown by clear and convincing evidence that the identification was based on observations of the defendant other than during the arguably improper pretrial identification. (*People v. Connolly* (1973), 55 Ill. 2d 421, 303 N.E.2d 409; *People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462; *People v. Kirk* (1979), 76 Ill. App. 3d 459, 394 N.E.2d 1212; *People v. Green*.) The burden is on the State to prove that the in-court identification was not tainted by the alleged illegal procedures but rather was of an independent origin. (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.) As stated above, the trial judge in the instant case correctly determined that Sharon Cerda's in-court identification of the defendant was based on her contact with him at the time of the

---

[1] At oral arguments, defendant's counsel conceded that Cerda's contact with the defendant as he was led past her in the police station was inadvertent. We do not believe these inadvertent circumstances led to a subsequent identification based on overly suggestive procedures. See *People v. Walker* (1979), 77 Ill. App. 3d 227, 395 N.E.2d 1087.

robbery. This identification did not result from the prior photographic identification. Therefore, we believe that it is not necessary to determine whether the photographic identification procedures utilized by the police were unnecessarily suggestive.

### III

As his third argument on appeal, the defendant contends that the trial court erred in refusing to hold a hearing on the defendant's motion to quash his arrest and to suppress the tainted and illegal evidence that flowed from the arrest. At the time of his motion the defendant alleged that the police did not have probable cause to arrest the defendant, that the police report did not describe adequately the arrest of the defendant, and that the report did not corroborate the testimony of Officer Hollinger, the arresting officer.

The request for a hearing on the motion to quash the defendant's arrest was made on the third day of trial. The trial judge ruled that the motion, coming in the midst of trial, was untimely. The judge recognized that the defendant had a copy of the police report for some time and that the defendant failed to cross-examine police officer Hollinger or raise certain questions at that time that would have been relevant to a motion to quash the arrest.[2]

Courts in this State have refused to grant intratrial motions to suppress evidence when the motion is considered untimely under the circumstances presented. (See, *e.g., People v. Kahl* (1978), 63 Ill. App. 3d 703, 380 N.E.2d 487 (suppression based on warrantless search and illegal arrest); *People v. Bracy* (1973), 14 Ill. App. 3d 495, 302 N.E.2d 747 (suppression of identification because of suggestiveness); *People v. Jones* (1971), 2 Ill. App. 3d 236, 276 N.E.2d 477, *aff'd on other grounds* (1972), 52 Ill. 2d 247, 287 N.E.2d 680 (suppression of identification due to illegal arrest); *cf. People v. Zazzetta* (1963), 27 Ill. 2d 302, 189 N.E.2d 260 and *People v. Tripkovich* (1972), 6 Ill. App. 3d 37, 284 N.E.2d 323 (intratrial motions to suppress timely).) While we feel the trial judge in the instant case had adequate reason to deny the defendant's motion on the basis of its untimeliness, we further note that the defendant was not prejudiced by this ruling since suppression of evidence was not warranted.

When an improper arrest occurs the power of the court to try the defendant is not impaired. (*People v. Finch* (1970), 47 Ill. 2d 425, 266 N.E.2d 97, *cert. denied* (1971), 404 U.S. 836, 30 L. Ed. 2d 68, 92 S. Ct.

---

[2] The only discrepancy brought out during cross-examination was that the number of the license plate on the Cadillac differed in Officer Hollinger's testimony and in the police report. Officer Hollinger testified that the 1977 plate was CBS 427. The police report said the number was CBS 45.

122.) The proper remedy is not to exclude all evidence following the arrest (*People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225) but to exclude all evidence which flowed directly from the improper arrest (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407). Assuming the defendant's arrest was improper due to a lack of probable cause, none of the evidence presented by the State flowed from that arrest. The photograph of the defendant which was identified by the complainant was in existence at the time of the defendant's arrest. It was not taken as a result of this arrest.

■■ ■ The defendant contends that the identifications should be suppressed because he was led past the complainant in the police station on the night of his arrest and that this view of the defendant influenced her identifications. We disagree. The complainant's pretrial and in-court identifications were based on her adequate opportunity to view the defendant at the time of the robbery. Her independent ability to identify the defendant purged her identifications of any illegality relative to the alleged improper arrest. (*Wong Sun v. United States*; *People v. Hornal*.) Since suppression would not have been warranted had the trial judge granted the defendant's motion for a hearing on the matter of his alleged illegal arrest and determined that the arrest was illegal, the defendant suffered no prejudice that would require remandment of this case for further proceedings.

## IV

The defendant's final argument on appeal is that the trial court erred in not allowing him to present testimony regarding a confession by an out-of-court declarant. As stated earlier in this opinion, the defense called Calvin Miller as a witness. According to the defendant's offer of proof, Miller would testify that a person named Emanuel Hoskins, also known as Pinochle, told him that on or about October 10, 1977, that he, Hoskins, was the one who took the complainant's purse. Miller was not allowed to testify because his testimony was hearsay and unreliable. The defendant acknowledges that Miller's testimony is hearsay but contends that it is admissible because it constitutes a declaration against penal interest.

Generally, an extrajudicial declaration of a third party, not made under oath, that he committed the crime is purely hearsay and, even though it is a declaration against interest, is inadmissible. (*People v. Lettrich* (1952), 413 Ill. 172, 108 N.E.2d 488; *People v. Foster* (1978), 66 Ill. App. 3d 292, 383 N.E.2d 788.) The rationale for this rule was stated in *People v. Lettrich*:

> "General admission of such statements could seriously handicap
> the administration of justice in tempting everyone accused of

crime to introduce perjured testimony that a third party, then deceased or beyond the jurisdiction of the court, had declared that he, and not the accused, had committed the crime." (413 Ill. 172, 178, 108 N.E.2d 488, 491-92.)

In *Lettrich* a hearsay declaration against interest was admitted into evidence because of special compelling circumstances. The only evidence of guilt in the murder prosecution was the defendant's repudiated confession, allegedly obtained by duress and fear, which was contrary to many of the known facts of the case. The *Lettrich* court held that under these special circumstances justice demanded departure from the exclusionary rule.

■■ Declarations against penal interest also have been admitted into evidence when the hearsay statement was made under circumstances that tended to assure reliability. In *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the United States Supreme Court set forth four factors that would provide considerable assurance of reliability. According to *Chambers*, a declaration against penal interest tending to exculpate a defendant could be testified to by a witness to the declaration where: (1) it was made to a close acquaintance shortly after the crime occurred; (2) it was corroborated by other evidence in the case; (3) it was self-incriminatory and against the declarant's interest; and (4) the declarant was available for cross-examination by the State.

The declaration against penal interest in the case at bar was properly suppressed because it did not meet the compelling circumstances test in *Lettrich* nor did it satisfy the *Chambers'* reliability factors. Unlike *Lettrich*, sufficient evidence exists in the case at bar upon which to convict the defendant. Furthermore, unlike *Chambers*, the hearsay statement involved in this case was not originally made nor subsequently offered at trial under circumstances that provided considerable assurance of reliability. There was no showing that Calvin Miller was a close acquaintance of Emanuel Hoskins. The purported confession by Hoskins was unsupported by independent evidence. Although Tarver and the defendant testified that Hoskins (also referred to as Peanut and Pinochle) was dropped off at 50th and Ashland at 9 p.m. on the night of the robbery, they admitted that they did not see Hoskins after he got out of the car. They did not testify that they saw Hoskins commit the robbery of Sharon Cerda, and thus their testimony did not corroborate the hearsay declaration by Miller that Emanuel Hoskins committed the robbery. The declaration is further unreliable because the declarant was not available for cross-examination by the State. The defendant's argument that Hoskins was present in Chicago at the time of the trial is insufficient to meet the requirement of availability. Hoskins remained unapprehended at trial despite the fact that he was subpoenaed by the defendant.

Therefore, the trial court correctly excluded the testimony of Calvin Miller regarding an alleged out-of-court confession made by an unavailable third party.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McNAMARA and SIMON, JJ., concur.