THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STANLEY WRICE, Defendant-Appellant.

First District (4th Division)   No. 83—1683

Opinion filed January 23, 1986.

JOHNSON, J., dissenting.

Steven Clark and Scott Graham, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Frank G. Zelezinski, Karyn Stratton, and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Defendant, Stanley Wrice, was charged by indictment on various

crimes including rape, deviate sexual assault, armed violence, and unlawful restraint. He was found guilty of these offenses by a jury in the circuit court of Cook County and was sentenced to a 60-year term of imprisonment for rape and 40 years for deviate sexual assault, to run consecutively; seven years for armed violence, to run concurrently; and five years for unlawful restraint, to run concurrently. On appeal, defendant argues that: (1) he was not proved guilty beyond a reasonable doubt on each conviction; (2) the court abused its discretion in admitting photographs of the victim into evidence and allowing the jurors to view them in the jurors' room; (3) his 100-year aggregate sentence is excessive; (4) the trial court abused its discretion in imposing extended sentences for the rape and deviate sexual assault convictions; (5) the trial court abused its discretion in convicting him of unlawful restraint; and (6) the jury instructions given by the trial court on the armed-violence conviction were a violation of his due process rights.

On September 9, 1982, complainant, who had been drinking all that day, was walking to a liquor store when she was approached by several men in a car, one of whom was later identified as the defendant. One of the men asked whether she wanted a ride, and although the complainant did not remember how she got into the car, she apparently agreed to ride with them to the liquor store. When complainant realized she was not being driven to the store, she requested the men to let her out of the car. Instead, they drove her to the defendant's residence on South Chappel Avenue, in Chicago, and while at defendant's residence she was beaten, burned and raped.

The State's case included the testimony of two witnesses who verified that the defendant was one of the men who had raped and beaten the complainant. The first witness, Kenneth Lewis, testified that he was on the first floor of the defendant's house while the defendant and others were upstairs with the complainant. At some point he went upstairs and saw several men have intercourse with the complainant and saw the defendant hit the complainant. Lewis also stated that he tried to pull the defendant off the woman. After the defendant stopped hitting her, Lewis went downstairs. Later, the defendant came downstairs and picked up an iron that was on the stove. Lewis took the iron from him and the defendant went back upstairs. Lewis then heard slapping sounds so he went back upstairs and found the defendant continuing to beat the woman.

Lewis also stated that at some point later he left the house and when he returned he went upstairs and found the woman lying on the bed. He stated that there were burn marks in the shape of an

iron on her breast and legs and that she was burned from her head to her toe. Lewis returned downstairs and shortly thereafter the defendant again came downstairs and took a hot spoon off the stove. The defendant returned upstairs, at which time Lewis could hear the woman ask, "Why are you burning me?" He then heard the woman falling down the stairs and again saw the defendant strike her.

The State's second witness, Bobbie Joe Williams, also testified that he observed the defendant have intercourse with the complainant. Williams also stated that he saw the defendant take an iron off the top of the stove and walk upstairs. In addition, he testified that the next morning the defendant told him that they had "burned that bitch."

The State also called Dr. Nolan Lewis as a witness. Dr. Lewis testified that he saw the victim at the burn unit of the Loyola Medical Center, where she was in the intensive care unit. She was agitated, somewhat disoriented and screaming. Her injuries extended from her head to her toes and were predominantly bruises and burns. There were approximately 100 bruises varying in size from that of a dime all the way up to two or three inches in diameter. Her face was swollen with two burns on the right side of her face and chin with some minor burns around the corner of her mouth. Her neck was bruised. On the left side of her chest and extending to her breast was a large area that had been burned by a clothing iron. It was a second degree burn. A second degree burn is one only partly through the skin; that is, the bottom layer of the skin is preserved so that the skin can regenerate and it can heal on its own. There was a third degree burn over her right breast over her nipple. A third degree burn means that the burn is all the way through the skin and that the full thickness of the skin is destroyed. On her abdomen and on the lower part of her trunk there were some burns and bruises of a superficial nature. Her lower extremities on the front and back were covered with a large number of small bruises. She had second degree burns on her thighs that were also inflicted by an iron.

Dr. Lewis testified, however, that the main injuries were to the back. The upper part had third degree burns. Her deepest burns were on her buttocks in the shape of an iron. On her upper thighs on the back were third degree burns that had been inflicted by something other than an iron.

Because the burns were of a third degree and of a large area, there had to be skin grafting which was performed 11 days later. The grafting was done on her right breast, upper back and buttocks.

As a result of the surgery the victim lost a portion of her right nipple. Most of her buttocks required skin grafting. The burns covered at least 80% of her back. The scarring both from the burns and from the skin graft is permanent.

The defendant testified that he was in the house during the time of the offense, but that he did not participate in the rape and he did not know complainant was being raped. He further testified that he did see a woman with several men in his upstairs quarters but did not inquire as to why they were there.

Patricia Wrice, defendant's sister, lived in the downstairs rooms of the defendant's residence. She testified that several men did take a woman to the upstairs rooms and they did engage in sexual intercourse, but at no time did she see the defendant go upstairs. However, she also testified that at the time the men were upstairs with the complainant, she was in her downstairs bedroom, but that defendant was not in the bedroom with her during this time.

Defendant's first point raised on appeal is that he was not proved guilty beyond a reasonable doubt of the offenses for which he was convicted. Specifically, he argues that the witnesses had an inadequate opportunity to observe the incident and that the complainant was unable to identify him as one of the individuals who had raped and beaten her.

■ The State has the burden of proving beyond a reasonable doubt that a crime has occurred and that the accused is the person who committed it. Where the identification of the accused is in question, the State's burden may be met by offering a positive identification by a single witness who had an adequate opportunity to observe the offender even if the circumstances of the observation are less than perfect. (*People v. Lomax* (1980), 89 Ill. App. 3d 651, 656, 411 N.E.2d 1212, 1215.) It is the jury's province to determine whether the State has met this burden (*People v. McDonald* (1975), 62 Ill. 2d 448, 456, 343 N.E.2d 489, 493), and resolution of factual disputes and the assessment of the credibility of the witnesses are for the jurors. (*People v. Williams* (1983), 93 Ill. 2d 309, 315, 444 N.E.2d 136, 138.) Moreover, this court will not substitute its judgment for that of the trial court unless the evidence itself is so improbable as to raise a reasonable doubt of the defendant's guilt. *People v. Carlson* (1980), 79 Ill. 2d 564, 583, 404 N.E.2d 233, 241.

■ In the instant case, although the victim was unable to identify the defendant, she testified that she was raped at the defendant's residence. More importantly, the State presented the eyewitness testimony of both Lewis and Williams. Williams testified that

he saw the defendant have intercourse with the complainant and beat her. Lewis testified that not only did he see the defendant beat the complainant but also he attempted to stop the defendant from continuing the brutality. We believe that the testimony of these witnesses was sufficient evidence from which a jury could find that the defendant was guilty beyond a reasonable doubt.

■ The defendant next argues that the trial court erred in admitting into evidence several photographs of the complainant and in allowing the photographs to be brought into the jury room. He contends that the photographs were offered for their shock value and therefore unduly suggestive.

Based upon consideration of the probative value of a photograph as compared to its prejudicial effect, it is within the discretion of the trial court whether or not to admit a photograph in to evidence or allow it to go into the jury room. (*People v. Greer* (1980), 79 Ill. 2d 103, 117, 402 N.E.2d 203, 209-10; *People v. Williams* (1979), 71 Ill. App. 3d 547, 551, 390 N.E.2d 32, 36.) This decision by the trial court will not be reversed absent a showing of an abuse of discretion and resulting prejudice to the defendant. (*People v. Craig* (1977), 47 Ill. App. 3d 242, 251, 361 N.E.2d 736, 743.) Without doubt the photographs in this case were gruesome; however, so were the crimes. Moreover, the fact that the photographs are of a gruesome nature does not affect their admissibility as long as the photographs are relevant to establish any fact in issue. (*People v. Foster* (1979), 76 Ill. 2d 365, 377, 392 N.E.2d 6; *People v. Speck* (1968), 41 Ill. 2d 177, 202, 242 N.E.2d 208, *modified in part* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279.) In this case, in addition to the charges for rape and deviate sexual assault, the defendant was being tried for attempted murder and aggravated battery. We believe that the photographs depicting the extent of the complainant's injuries were relevant to the issue of whether the defendant did in fact attempt to murder the complainant. Also, the photographs were relevant as to the count of aggravated battery which was based upon permanent disfigurement. Accordingly, because we believe there was no abuse of the trial court's discretion, the admission of the photographs into evidence and into the jury room was appropriate.

Two additional arguments raised by the defendant relate to the sentences imposed by the trial court. First, the defendant contends that his sentences for rape and deviate sexual assault were excessive because they failed to provide for any chance of rehabilitation. Also, the defendant argues that it was improper to impose extended sentences. We disagree with both contentions.

■ As for the issue of excessiveness, it is within the discretion of the trial court, after considering the facts and circumstances of the case, to impose a particular sentence. (*People v. Almo* (1985), 108 Ill. 2d 54, 70, 483 N.E.2d 203.) Moreover, in making this determination, penalties are to be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, sec. 11; *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 648, 364 N.E.2d 491.) In this case, the complainant was repeatedly raped, beaten, and burned. There were over 100 bruises on her body and burns covered 20% of her body and 80% of her back. Under these facts we believe that the torture-like conduct engaged in by the defendant reached the level of seriousness so as to justify the trial court's imposition of the 60-year extended sentence for rape and the 40-year extended sentence for deviate sexual assault.

■ These extended sentences were to run consecutively in addition to a seven-year extended sentence for armed violence to run concurrently. The trial court sentenced the defendant under section 5—5—3.2(b)(2) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2)) for the offenses of rape and deviate sexual assault. Defendant argues that section 5—8—2(a) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2(a)) permits the imposition of an extended-term sentence only on the most serious offense of which he was convicted. The Illinois Supreme Court has held, however, in *People v. Jordan* (1984), 103 Ill. 2d 192, 206-07, 469 N.E.2d 569, that if the crimes for which a defendant is convicted are within the same class, for example, both crimes are Class X, the trial court may properly impose an extended-term sentence for both offenses if it finds that the offenses were accompanied by brutal or heinous behavior.

In this case, the defendant was convicted of two Class X felonies, and the trial court found that because of the brutal and heinous behavior that accompanied the crimes, an extended sentence for both the rape and deviate sexual assault convictions was proper. In light of the inhumane acts that accompanied the crime in this case, the facts of which need not again be repeated, we believe the trial court properly imposed extended sentences.

■ The dissent contends that the consecutive sentences in this case are neither appropriate nor needed to protect the public from future criminal conduct by the defendant and that therefore the sentences should be modified to run concurrently. We recognize that consecutive sentences are rarely appropriate and that they must be

imposed sparingly. (*People v. Gray* (1984), 121 Ill. App. 3d 867, 872, 460 N.E.2d 354.) Nevertheless, in light of the facts in this case, we believe that the consecutive sentences are not at variance with the purpose or spirit of the law or manifestly in excess of the proscription of the Illinois Constitution requiring all penalties to be in proportion to the nature of the offense.

■ Finally, defendant claims that his conviction for unlawful restraint was based on the same act as the rape and deviate sexual assault offenses and therefore violates the one-act one-crime principle articulated in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838. *King* stands for the proposition that when more than one offense arises from a series of incidental or closely related acts and the offenses are not by definition lesser-included offenses, conviction with concurrent sentences can be entered. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838.) Consequently, a defendant is prejudiced as to a charge when he is convicted of more than one offense based on the same physical act. *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838.

Defendant cites *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547, in support of his argument that the unlawful restraint offense arose from the same physical act as the rape or deviate sexual assault offense. In *Jones*, the complainant was restrained and taken to another location where she was raped a short time later. Similarly, in this case the victim was restrained and taken to another location where she was raped. The *Jones* court held that the rape and unlawful restraint offenses arose out of a single act and the unlawful restraint offense was a lesser offense of the rape offense. (*People v. Jones* (1983), 114 Ill. App. 3d 576, 592, 449 N.E.2d 547.) There is no distinction between the present case and *Jones*. We therefore believe that the unlawful restraint offense arose out of the same physical act as the rape offense. Thus, defendant's conviction for the lesser offense of unlawful restraint must be vacated. See *People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369; *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266; *People v. McCann* (1979), 76 Ill. App. 3d 184, 394 N.E.2d 1055.

■ Defendant was also convicted of armed violence. His armed-violence conviction was based on the same physical act as his rape and deviate sexual assault convictions. The Illinois Supreme Court unequivocally held that a conviction for armed violence and the predicate felony cannot be based on the same physical act. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 168, 435 N.E.2d 477, 479.) Moreover, the court in *People v. Mormon* (1982), 92 Ill. 2d 268, 269-70,

442 N.E.2d 250, 251, held that a defendant's conviction for armed violence based on the offense of rape must be vacated as being a lesser-included offense than rape. We agree. The court determined that when a weapon is used to overcome the will of a rape victim, the use of the weapon is an element of force specified in the rape statute, and the defendant, having been convicted of rape, cannot also be convicted of armed violence. (*People v. Mormon* (1982), 92 Ill. 2d 268, 269-70, 442 N.E.2d 250.) Here, various objects were used to inflict burns to overcome the will of the victim. Thus, this case is the very type in which the court has explicitly held that a defendant cannot be convicted of both the predicate felony, rape or deviate sexual assault, and armed violence. The defendant's armed-violence conviction is therefore vacated.

Inasmuch as we have vacated the armed-violence conviction and sentence, we need not reach the defendant's contentions that the jury instruction as to the armed-violence conviction violated his due process rights and that the trial court abused its discretion in imposing an extended sentence for armed violence.

For the foregoing reasons, the 60-year sentence for rape and 40-year sentence for deviate sexual assault are affirmed, but the armed violence and unlawful restraint convictions and sentences are vacated.

Affirmed in part and vacated in part.

LINN, P.J., concurs.

JUSTICE JOHNSON, dissenting:

I respectfully dissent from that part of the majority opinion affirming the trial court's imposition of consecutive sentences. Generally, a sentence on review will not be disturbed unless it is greatly at variance with the purpose and spirit of the law or manifestly in excess of the proscription of the Illinois Constitution which requires that all penalties should be proportioned to the nature of the offense. (*People v. Fox* (1971), 48 Ill. 2d 239, 251, 269 N.E.2d 720, 728.) There are cases, however, that call for the court to modify sentences which have been imposed, even when such sentences are within the statutory limit. (See *People v. Wilkins* (1976), 36 Ill. App. 3d 761, 344 N.E.2d 724; *People v. Gill* (1972), 7 Ill. App. 3d 24, 286 N.E.2d 516; *People v. Golden* (1971), 1 Ill. App. 3d 947, 274 N.E.2d 892 (abstract of opinion).) The consecutive sentences given defendant, although within the statutory limits, are not required to protect

the public from future criminal conduct by defendant and, furthermore, do not reflect the objective of the Illinois Constitution of imposing sentences with a view toward restoring the offender to useful citizenship.

The Illinois Constitution directs that all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, sec. 11.) A 60-year sentence and a 40-year sentence to run concurrently would reflect the seriousness of the instant offenses committed and would allow defendant a chance of returning to useful citizenship as a senior citizen. The consecutive sentences, which the majority concludes are justified, equal an aggregate 100-year sentence. The consecutive sentences eliminate any possibility of defendant's restoration to useful citizenship. His demise in prison is guaranteed. Moreover, the aggregate sentence is 70 years more than the average sentence of a convicted murderer in this State. (See Illinois Criminal Sentencing Commission Annual Report (1982).) This cannot be justified no matter how heinous the conduct of the defendant might have been.

Finally, consecutive sentences are rarely appropriate (*People v. Meints* (1976), 41 Ill. App. 3d 215, 221, 355 N.E.2d 125, 130); consecutive sentences should be imposed sparingly (*People v. Zadel* (1979), 69 Ill. App. 3d 681, 683, 387 N.E.2d 1092, 1093). This court has not hesitated to modify sentences from consecutive to concurrent terms where the circumstances so require and where the objective of further protecting the public from future criminal conduct by an offender is not served. *People v. Griffin* (1982), 113 Ill. App. 3d 184, 193-94, 446 N.E.2d 1175, 1182.

Consecutive sentences are imposed to further protect the public from future conduct of criminal offenders. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b).) As indicated, defendant received a 60-year sentence for rape and a 40-year sentence for deviate sexual assault. These sentences imposed to run concurrently instead of consecutively will more than serve the purpose of protecting the public from future criminal conduct by defendant.