NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240542-U

NO. 4-24-0542

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 23, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| ISAIAH W. MIKKELSON, | ) | No. 23CF129 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Talmadge "Tad" Brenner, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Harris concurred in the judgment.
Justice Doherty concurred in part and dissented in part.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed the judgment of the trial court because (1) defendant's sentence was not excessive and (2) the court did not abuse its discretion by imposing consecutive sentences.

¶ 2        In September 2023, defendant, Isaiah W. Mikkelson, pleaded guilty to two counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(f) (West 2020)) involving two minors and was sentenced to two consecutive six-year terms of imprisonment.

¶ 3        Defendant appeals, arguing that (1) the sentences were excessive and (2) the trial court erred by imposing consecutive sentences. We disagree and affirm.

¶ 4                              I. BACKGROUND

¶ 5        In February 2023, defendant was charged by information with five sex offenses involving two minors—namely, one count of criminal sexual assault (count I) (*id.* § 11-1.20(a)(4))

and two counts of aggravated criminal sexual abuse (counts II and III) (*id.* § 11-1.60(f)) involving R.T.M., as well as two counts of aggravated criminal sexual abuse (counts IV and V) (*id.*) involving G.L.D.

¶ 6 The charges asserted that defendant had, when he was age 17 or older and in a position of trust, authority, or supervision in relation to the minors, committed various acts of sexual penetration with his finger and acts involving the touching or fondling of the minors' sex organs or breasts. *Id.* The information was amended in March 2023, adding two additional counts of child pornography (counts VI and VII) (*id.* § 11-20(a)(4)). Both additional counts asserted that defendant "knowingly solicited, used, persuaded, induced, enticed, or coerced [R.T.M. and G.L.D.,] whom he [knew] or reasonably should [have] know[n] to be under the age of 18 *** to appear in a film, videotape, [or] other similar visual production, involving an act of masturbation." (We note that it was later established that R.T.M. and G.L.D. were 14 to 15 years old during the period the offenses were alleged to have occurred.)

¶ 7 That same month, a formal indictment was filed, and defendant was released from custody after posting 10% of his $250,000 bond. A condition of defendant's release was that he was not to leave Illinois without the permission of the trial court. On three different occasions, that condition was modified to allow defendant to leave the state to travel with his family, seek counseling, and attend a funeral, respectively.

¶ 8 On September 26, 2023, defendant pleaded guilty to counts II and IV (aggravated sexual criminal abuse), and the remaining counts were dismissed. The agreement further placed a cap of 14 years for all sentencing options. In support of the plea, the State provided the following factual basis:

"[I]f this case had proceeded to trial, the People would present evidence that on the

dates listed in the Information during January to December of 2021, the defendant was working as a youth director or youth minister at a local church here in Quincy, Adams County, Illinois. We would present evidence that both [R.T.M.] and [G.L.D.] were individuals that attended that youth ministry and that the defendant was their youth director or youth minister. We would present evidence that during that time, the defendant touched the vagina of R.T.M. over her clothes. We would also present evidence that he did the same thing to G.L.D.. Both R.T.M. and G.L.D. were under 18 years of age at the time and the defendant was over the age of 17 at the time."

¶ 9        Defense counsel stipulated that the State would present evidence substantially to that effect.

¶ 10                          A. Sentencing

¶ 11        A sentencing hearing was held on November 17, 2023, at which time the trial court acknowledged its receipt of the presentence investigation report (PSI). Concerning the police reports attached to the PSI, the court stated that it would only consider the statements made by the two victims and by defendant and it would not consider any other statements made by other individuals.

¶ 12        The trial court also heard testimony from two individuals, Eric Thorsen, a character witness for defendant, and Dr. Mark Carich, a licensed sex offender evaluator. Dr. Carich testified that he administered the Static-99R sex offense risk assessment tool and dynamic risk factors to assess defendant's risk to reoffend. The Static-99R scored defendant as an "average" risk to reoffend, while defendant's dynamic risk factors placed him  at a "low to very low" risk to reoffend. On cross-examination, the State asked whether the Static-99R was the "gold standard of

risk assessments," and Dr. Carich answered, "Whether you like it or not, it is what it is."

¶ 13    Dr. Carich recommended a sentence of probation so that defendant could receive appropriate counseling and treatment, which Dr. Carich stated defendant would not receive if incarcerated.

¶ 14    The trial court asked Dr. Carich, "[D]id you do any independent investigation other than speaking with the defendant? Did you read police reports, talk to any witnesses, anything like that or is your evaluation based solely on what was reported from the defendant?" Dr. Carich answered that he "review[ed] whatever was in the file [defense counsel] sent me." The court asked, "What was that?" Dr. Carich replied, "I believe there [were] police reports. This was back in July. I did not talk to [any] witnesses because it would be very rare if I ever did in my career."

¶ 15    Dr. Carich opined in his written evaluation, which was part of the PSI, that defendant was "not a threat to anyone in the community."

¶ 16    R.T.M.'s victim impact statement was read into the record by detective Taylor Dralle. Part of the statement contained the folllowing:

> "I just want to say you have put me through so much stress and anxiety throughout this case. I have lost my trust with a lot of my friends and family and that has been hard since I have lost a lot of my friends. I feel bad for the other girls that you did this to. We should have never had to go through that but you got us to trust you and you manipulated our trust to *** use it against us. I have been depressed and I trusted you to help me but you had to go out of your way and make my depression so much worse."

R.T.M's mother read her own victim impact statement, observing that R.T.M. had gone from a "fun-loving spirit" who was involved in numerous sports and activities to someone who "no longer

participates in anything" and "has panic attacks sitting in her car when she drives to school." (We note that the trial court also received a written victim impact statement from G.L.D., but that statement is not a part of the record on appeal.)

¶ 17    The trial court also received 16 written character statements, many from individuals who knew defendant from church, attesting to his involvement in the community and his helpful nature.

¶ 18    Following arguments of counsel, defendant offered a statement in allocution in which he accepted "full responsibility" for his actions and said that he was "now prepared to face the consequences of those actions." He stated that he regretted "the amount of pain and suffering that I have caused [G.L.D. and R.T.M.] and sincerely apologize to both of them and their families and know that what I did was wrong and I wish with all I have that I could make everything right again." He apologized to a number of others, including his church and his parents, and then stated that he was "committed to making changes in my life to ensure that I never make this same mistake again." He added, "I'm currently attending and will continue to attend counseling for my own mental health. I'm attending a weekly *** adult bible study as well as a weekly Men's Group where I have a wonderful support group that encourages me and is helping me and walking me through life."

¶ 19    The trial court then rendered its decision, imposing two consecutive six-year prison terms. In doing so, the court stated it had considered the PSI, the evidence presented at the sentencing hearing, defendant's statement in allocution, the victim impact statements, the 16 letters of recommendation or character references, "the arguments of counsel, all statutory and nonstatutory factors in aggravation and mitigation whether specifically mentioned or not, and the history and character of the defendant." It specifically did not consider those "portions of the police

- 5 -

reports that [did] not directly relate to these two named victims."

¶ 20        In explaining its ruling, the trial court noted that it had given due regard for the seriousness of the offenses and considered the objective of restoring defendant to useful citizenship. The court explained its concerns as follows:

> "[W]hat I see is grooming of these two young ladies [that] went on for a very long period of time. There were multiple incidents of the position being taken advantage of and, granted, that is an element of the offense to which you have pled guilty but the position was used. There is a statutory factor in aggravation as to whether a crime was committed in a church and it appears as though that was the case. The sound room apparently was in the church and even if it wasn't, it was connected with church-oriented activities."

¶ 21        The trial court further stated, "The Court has considered the objective of restoring [defendant] to useful citizenship. The Court has considered the 16 letters, sincerely written letters. Some from people that I know. Some from people that I have a good deal of respect for." It further considered the statement from the mother of one of the victims. The court observed, "We are dealing with children who were victimized. They were inappropriately touched, they were encouraged to make videos and take photographs of themselves. They will be traumatized forever."

¶ 22        Concerning the evidence submitted at the sentencing hearing, the trial court stated:

> "[Defendant] has done many, many good things in his life but the fact that this abuse has occurred is extremely serious. It cannot be overlooked. [Defendant] indicates that he is going to change things and make sure this doesn't happen again. The Court has considered the report of the doctor who did the examination and I

find certain things to be quite disturbing. [Defendant] indicated that he wanted to go into ministry along with the landscaping and horticulture which was mentioned in the statement in allocution."

¶ 23 The trial court told defendant, in passing, that he "should never even consider ministry ever, ever. I don't know if anyone has told you that but you should not. You are a convicted sex offender." The court also said that it was

"disturbed by the event which [defense counsel] mentioned which was the Freedom Fest and [defendant's] volunteering to be a security guard while on bond for a sex offense. It demonstrates that you don't understand the gravity of the situation. You shouldn't be around children, not while on bond for a sex offense. It was a terrible failure to appreciate the situation."

¶ 24 The trial court concluded its remarks by stating that imprisonment was "necessary for the protection of the public and that probation would deprecate the seriousness of the conduct and would be inconsistent with the ends of justice." The court further found "that due to the nature and circumstances of these offenses, the protection of the public is necessary." Accordingly, the court did not impose the maximum sentence it could have of 14 years but imposed "sentences of six years for each to run consecutively," for a total sentence of 12 years in prison.

¶ 25 B. Motion To Reconsider Sentencing

¶ 26 Defendant moved to reconsider his sentence, arguing that (1) the trial court erred by imposing consecutive sentences and (2) the sentences were excessive in light of certain mitigating factors. The court denied the motion, finding that, "based on the entirety of the record, *** the sentence was appropriate" and, further, "that consecutive sentencing was appropriate." The court noted that it had not laid out the full details supporting its decision at the sentencing

hearing, in part, to avoid revictimizing the minors, but also for the protection of defendant, whose family and friends had been present. When denying defendant's motion to reconsider, however, the court recited many of those details it had previously considered but not read into the record. The court stated as follows:

"[F]or each of these two named victims, there was a very striking pattern that was not absolutely identical between the two but very, very similar. We had a pattern of texting followed by sexting. It kept getting progressively worse. There were videos of the defendant, his private area, and acts of the defendant masturbating sent to both of these girls. Both of these girls were encouraged and did, in fact, send videos to the defendant of them engaged in sexual activity. One of them masturbating I believe with a hair brush or perhaps a toothbrush. [Defendant] himself admitted to receiving such a video. So, in other words, we have child pornography which is uncharged but is part of the pattern that we have seen.

We had various touching both inside and outside of clothing at various events. In terms of G.L.D., we had touching in a car which certainly wasn't in a church group or setting. We had touching at a church camp which would not qualify as a factor in aggravation. And I believe we had touching in the sound booth, which is definitely located at the church.

What became very apparent from what reading both of the statements of both of the named victims is that most of the events occurred in the sound booth at the church on a Thursday evening. One of the girls specifically said she was dropped off at 5:30 early, quote, before church, which certainly implies or suggests that this is a worship service. I don't actually find that a worship service is necessary

- 8 -

because if we look at factor number 11, it reads the offense took place in a place of worship—that's where we are—or on the grounds of a place of worship, comma, immediately prior to, during, or immediately following worship services. Well, this was a place of worship. The question is whether it has to be immediately before or after is subject to interpretation and there is really no case law on that. But in this case, there was youth group and these events in the sound room were either during or immediately after or before the service at the youth group. In one case, one of the victims, I believe it was R.T.M., said that the rest of the group was, quote, in the chapel while this happened so it would certainly seem that for some of these events, it was immediately prior to or immediately after worship services. In any event, it is definitely clear that most of these happened in the church itself so I believe that the factor in aggravation number 11 applies.

But going on with the pattern, we have touching both under the clothes and over the clothes. We have what appears to be digital penetration that occurs. We have threats that if videos were not sent—this is by one of the girls—that the defendant would kill himself. That was followed up by sending a picture of a knife to that particular victim. One victim states that she was offered money to engage in further sexual acts. Both girls indicate that they were encouraged to do further sexual acts and the defendant suggested to them that more extreme sexual acts were wanted by the defendant.

This was not a single event for either girl as was initially suggested by the doctor. On cross-examination, [the State] brought out in the doctor that this was not a single event for either of these victims but rather a protracted grooming process

for both. It could have been worse but it was still extreme. In terms of R.T.M., there were three separate acts. In terms of G.D.L., she said that there was digital penetration on three or four separate occasions. She was fondled outside of her clothing, quote, maybe twice, unquote. So all of this is adding up to not one victim but two victims and patterns with each of the victims. The defendant admitted to exchanging nude photos with the girls. He admitted to asking them to send him nude photos. He admitted to touching breasts and rubbing the vaginal area over the underwear. He actually admitted penetration through the clothing. He admitted to sending pictures of his genital area. He admits to sending masturbation videos to the girls and having them send the same to him.

The Court has considered the seriousness of this. The Court has considered all of this. The Court did not lay out the details at the time of the original sentencing hearing for many reasons. In part, the Court did not want to revictimize these girls. In part, the Court did not want to go through what was already in the record in the presence of the defendant's family and friends. It was for the defendant's protection to some extent. Maybe the Court was wrong for not being more precise but those factors were looked at, considered, and well known to the Court and considered by the Court.

The fact that we have two victims *** with the same pattern truly tells this Court that the public does need protection. Further, as [the State] pointed out, the defendant, after these things began to come to light, returned to the same position. That, at the very least, causes great, great concern. The court really doesn't even need to get into the Freedom Fest and the bond modification situation because there

is more than enough in the record to demonstrate that there is a need to protect the public.

*****

The primary need to protect the public is the fact that we have protracted grooming of two different victims and the protracted grooming of two different victims was very, very consistent. It was premeditated. The defendant understood it. The defendant stated at least on one occasion that he knew this was illegal conduct and continued to do it anyway. The defendant asked for and contemplated more extreme sexual acts."

¶ 27 The trial court explained that it had not sentenced defendant to the maximum available "because of the factors in mitigation mentioned before[—namely,] his youth, the fact that he has no prior criminal record, the fact that he has demonstrated many good qualities in terms of assisting individuals, in terms of assisting members of the community." Even so, the court noted that "what we have is a pattern of predatory abuse which cannot be ignored, which should not be ignored, in which this Court considered in fashioning its sentence."

¶ 28 This appeal followed.

¶ 29                                    II. ANALYSIS

¶ 30 Defendant appeals, arguing that (1) the sentences were excessive and (2) the trial court erred by imposing consecutive sentences. We disagree.

¶ 31                                A. Excessive Sentences

¶ 32 Defendant first argues that his sentences were excessive in light of the various mitigating factors presented.

¶ 33                      1. *The Applicable Law and Standard of Review*

¶ 34        The Unified Code of Corrections (Code) (730 ILCS 5/1-1-1 *et seq.* (West 2022)) sets forth mitigating and aggravating factors that the trial court must consider when determining an appropriate sentence. *People v. Brunner*, 2012 IL App (4th) 100708, ¶¶ 43-45. "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." (Internal quotation marks omitted.) *People v. Turner*, 2024 IL App (4th) 230641, ¶ 57; see Ill. Const. 1970, art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."). A trial court need not articulate each factor it considers in rendering the sentence for a juvenile offender, and an omission does not mean the trial court did not consider all relevant factors. *People v. Merriweather*, 2022 IL App (4th) 210498, ¶ 31; *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 74.

¶ 35        A trial court's sentencing decision is reviewed under an abuse of discretion standard. *People v. Lee*, 2023 IL App (4th) 220779, ¶ 55; *People v. Lang*, 2023 IL App (2d) 220091, ¶ 40. A decision constitutes an abuse of discretion if it is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *People v. Lawson*, 2018 IL App (4th) 170105, ¶ 28. "[A] sentence within statutory limits is excessive only if 'it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *Lee*, 2023 IL App (4th) 220779, ¶ 55 (quoting *People v. Winningham*, 391 Ill. App. 3d 476, 484-85 (2011)).

¶ 36                                          2. *This Case*

¶ 37        A review of the record shows that the trial court (1) took note on several occasions of the mitigating evidence defendant presented and (2) factored that evidence into its ultimate

sentence. Indeed, the court stated that it had reviewed "all of the character reference letters and took those for what it was worth." The court also stated that it "paid a lot of attention to those probably more than [it] should have but, in any case, those were considered." Moreover, the court addressed some of defendant's specific concerns regarding mitigation during the argument on reconsideration, stating, "Maybe the Court was wrong for not being more precise but those factors were looked at, considered, and well known to the Court and considered by the Court."

¶ 38     The trial court further acknowledged that defendant's mitigation evidence did impact its sentencing decision. The court explained that it had not sentenced defendant to the maximum available sentence "because of the factors in mitigation mentioned before; his youth, the fact that he has no prior criminal record, the fact that he has demonstrated many good qualities in terms of assisting individuals, in terms of assisting members of the community."

¶ 39     An appellate court may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11; *Turner*, 2024 IL App (4th) 230641, ¶ 57. Moreover, "[w]here the record shows the trial court heard evidence in mitigation, this court will presume it considered the evidence, absent contrary evidence in the record." *People v. Mitchell*, 395 Ill. App. 3d 161, 168 (2009). "[A] defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." (Internal quotation marks omitted.) *People v. Cisco*, 2019 IL App (4th) 160515, ¶ 31. Further, "[t]he existence of mitigating factors does not require the trial court to reduce a sentence from the maximum allowed." (Internal quotation marks omitted.) *Id.*. Here, the trial court not only heard the mitigation evidence but articulated that it considered it as justification for not imposing the maximum sentence available. We conclude that the court's sentence constitutes no abuse of discretion.

¶ 40 Defendant next argues that the trial court (1) gave insufficient weight to Dr. Carich's testimony and (2) had an agenda leading into the sentencing hearing to punish the church. We disagree.

¶ 41 First, the trial court considered Dr. Carich's opinions and his suggestion of probation but disagreed with them, given the nature and circumstance of the criminal acts involved. According to the court, "[p]robation would deprecate the seriousness of the conduct and would be inconsistent with the ends of justice." The court also referred to its recognition and familiarity with the "emerging sciences concerning brain development as it affects people roughly up to the age of 25."

¶ 42 Second, regarding the trial court's remarks that it was "extremely problematic that sex abuse happens in churches" and that it was "amazing to [the court] that any religious institution does not have policies and procedures and education in place to prevent situations like this from happening," we conclude that the court considered only proper factors and was appropriately focused on the nature of the criminal conduct and its impact on the victims. This focus was not indicative of any predisposition. "The fact that the sentencing judge added some personal observations before imposing sentence, while not to be encouraged, is of no consequence." *People v. Steppan*, 105 Ill. 2d 310, 323 (1985).

¶ 43 Next, defendant argues that the trial court improperly considered factors inherent in the offense, pointing to the court's discussion of the actual incidents. It is well established that a factor inherent in the offense should not be considered as a factor in aggravation in sentencing (*People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009)). However, there is a strong presumption that the trial court based its sentencing determination on proper legal reasoning. We review *de novo* whether a trial court relied on an improper factor. *People v. Williams*, 2018 IL App (4th) 150759,

¶ 18. Defendant bears the burden to affirmatively establish that the sentence was based on improper considerations. See *id.* ¶ 19; *People v. Conley*, 118 Ill. App. 3d 122, 133 (1983).

¶ 44    The State claims this issue was forfeited because defendant did not include it in his motion to reconsider sentence and has not argued plain error on appeal. Although we agree with the State that the issue was not preserved in the motion to reconsider (*People v. Ahlers*, 402 Ill. App. 3d 726, 733 (2010) (quoting Illinois Supreme Court Rule 604(d) (eff. July 1, 2006)), we conclude that no error was committed.

¶ 45    When determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *Merriweather*, 2022 IL App (4th) 210498, ¶ 31. When fashioning the exact length of a particular sentence within the sentencing range for a given crime, the trial court may consider as an aggravating factor the degree of harm caused to a victim, even when serious bodily harm is arguably implicit in the offense of which the defendant is convicted. *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986). The trial court may also consider the manner in which the crime was committed, as well as the seriousness, nature, and circumstances of the offense, including the nature and extent of each element of the offense. *Id.* at 271-72. However, the trial court may not consider the end result, such as the victim's death in a murder case, as a factor in aggravation because death is implicit in the offense. *Id.* at 272. (We also note that when sentencing a defendant for murder, it cannot be error for the court to mention that someone was killed.)

¶ 46    Having reviewed the entire record, we conclude that the trial court considered all the appropriate factors and defendant's sentences were not excessive.

¶ 47    We additionally note that the trial court specifically declined to impose the

maximum sentence. A reviewing court presumes that a sentence imposed within the statutory range provided by the legislature is proper. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 16. The trial court's sentence is entitled to "great deference because the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Etherton*, 2017 IL App (5th) 140427, ¶ 15. The sentencing judge adequately considered the mitigating and aggravating factors, and it is not our duty to reweigh the factors involved in his sentencing decision. *People v. Coleman*, 166 Ill. 2d 247, 261-62 (1995). The sentences are not "manifestly disproportionate to the nature of the offense or greatly at variance with the spirit and purpose of the law." See *Turner*, 2024 IL App (4th) 230641, ¶ 56 (citing *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). For all of these reasons, we conclude that the trial court did not abuse its discretion in sentencing defendant to six years of prison for each conviction.

¶ 48                                    B. Consecutive Sentences

¶ 49        Defendant also argues the trial court erred by ordering that his six-year sentences be served consecutively. We disagree.

¶ 50                        1. *The Applicable Law and Standard of Review*

¶ 51        Generally, under section 5-8-4(a) of the Code (730 ILCS 5/5-8-4(a) (West 2022)), "[w]hen an Illinois court imposes multiple sentences of imprisonment on a defendant at the same time *** the sentences shall run concurrently unless otherwise determined by the court." However, a court "may" impose consecutive sentences "if, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant." *Id.* § 5-8-4(c)(1).

¶ 52    It has been said that "consecutive sentences are rarely appropriate" (*People v. Wrice*, 140 Ill. App. 3d 494, 500-01 (1986)) and that they "should be imposed sparingly" (*People v. O'Neal*, 125 Ill. 2d 291, 298 (1988)). However, "rarely" does not mean "never," and even the maximum aggregate sentence authorized by the legislature carries with it a presumption of validity. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 53    We review the imposition of consecutive sentences under an abuse of discretion standard. *O'Neal*, 125 Ill. 2d at 298. A decision constitutes an abuse of discretion if it is "fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." (Internal quotation marks omitted.) *Lawson*, 2018 IL App (4th) 170105, ¶ 28. An abuse of discretion may also be found when the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Lee*, 2023 IL App (4th) 220779, ¶ 55. Either way, "[a]bsent an abuse of discretion by the trial court, a sentence may not be altered upon review." *Lawson*, 2018 IL App (4th) 170105, ¶ 28 (citing *People v. Price*, 2011 IL App (4th) 100311, ¶ 36).

¶ 54    "A trial court's sentencing decision is entitled to great deference, and we may not substitute our judgment for the trial court's merely because we might have weighed the sentencing factors differently." *Id.* (citing *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010)).

¶ 55                                    *2. This Case*

¶ 56    Ample evidence exists in the record in this case, which the trial court carefully described during both the sentencing hearing and the hearing on defendant's motion to reconsider, to support the court's conclusion that consecutive sentencing was required to protect the public from further criminal conduct by defendant.

¶ 57    Specifically, defendant engaged in, as the trial court put it, a "protracted" period of

- 17 -

grooming the two child victims, whom he had access to as their youth director at church. During this period, which spanned an entire calendar year, he touched them over and under their clothing multiple times, including digital penetration. He committed these acts at various locations, including in a car, at a church camp, and in the sound booth at the church immediately before or after church services.

¶ 58    Defendant also sent the girls videos of himself masturbating and convinced them to send him videos of them doing the same. He threatened the girls that if they did not send him such videos in return, he would kill himself, and he followed up by sending a picture of a knife. He offered one of the girls money to engage in further sexual acts. As the trial court noted, defendant stated on at least one occasion that he knew his conduct was illegal, and he "continued to do it anyway."

¶ 59    Both girls stated that he wanted them to engage in more extreme sexual acts. Both girls were traumatized and suffered depression, anxiety, and fear, particularly in relation to attending church services. Nonetheless, even after defendant's conduct came to light, he returned to the same position at his church. And, as part of his "life plan" in his sex offender evaluation, he expressed a desire to work as a minister.

¶ 60    Much of the aforementioned evidence relates to the nature and circumstances of the offense, but it also is pertinent to the defendant's history and character.

¶ 61    For instance, defendant's choosing two child victims over whom he held a position of trust demonstrates a predatory nature and willingness to abuse authority. His soliciting masturbatory videos from children demonstrates not only a sexual perversion but also an inclination toward one of society's most revolting crimes—child pornography. His threatening to harm himself and sending images of a knife to the girls to force them to create and send him child

pornography demonstrates that he is dangerously manipulative. His acknowledging that his conduct was wrong but persisting in it—and expressing a desire to commit even worse crimes—demonstrates a broken moral code. His returning to his youth director position, volunteering as a security guard at a community festival, and believing a career in ministry might be appropriate for him demonstrates, as the trial court noted, that he does not appreciate the seriousness of his conduct. And the fact that defendant was not deterred from sexually abusing young girls in a church demonstrates a significant level of incorrigibility and depravity.

¶ 62      Defendant argues on appeal that the trial court "barely mentioned [defendant's] age and never mentioned Dr. Carich's opinion that [defendant] was a low risk to re-offend." However, the court specifically stated that it "did consider the defendant's youth," was "very well aware of the emerging sciences concerning brain development as it affects people roughly up to the age of 25," and "did consider that in [defendant's] situation."

¶ 63      Regarding Dr. Carich's opinion, the trial court questioned Dr. Carich's testimony when it stated, "This was not a single event for either girl as was initially suggested by the doctor." Additionally, the court itself questioned Dr. Carich directly about the basis for his opinion while he was testifying. We also note that, while Dr. Carich gave more weight to defendant's dynamic risk factors, which placed defendant at a "low to very low" risk to reoffend, he also testified that the Static-99R, which measured defendant as an "average" risk to reoffend, was the "gold standard" of his field.

¶ 64      The record makes clear that the trial court considered these factors and assigned them the weight the court deemed appropriate, which was the court's role. "A trial court's sentencing decision is entitled to great deference, and we may not substitute our judgment for the trial court's merely because we might have weighed the sentencing factors differently." *Id.* (citing

*Alexander*, 239 Ill. 2d at 212-13).

¶ 65 Moreover, "[W]e presume that a sentencing court considered all relevant factors, including factors in mitigation." *People v. Pence*, 2024 IL App (4th) 230799-U, ¶ 23 (citing *People v. Halerewicz*, 2013 IL App (4th) 120388, ¶ 43). " '[T]he court need not recite and assign a value to each factor it has considered.' " *Pence*, 2024 IL App (4th) 230799-U, ¶ 23 (quoting *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19).

¶ 66 Accordingly, we conclude that the trial court did not abuse its discretion by imposing consecutive sentences.

¶ 67                                          III. CONCLUSION

¶ 68 For the reasons stated, the judgment of the trial court is affirmed.

¶ 69 Affirmed.

¶ 70 JUSTICE DOHERTY, concurring in part and dissenting in part:

¶ 71 There are two trial court decisions at issue in this appeal: the imposition of a six-year term of imprisonment on each of the two charges to which defendant pleaded guilty and the decision to have those terms run consecutively. As discussed further below, both decisions are reviewed under the same standard of review: abuse of discretion. Employing that standard, the majority finds that the court acted within its discretion in both aspects of its sentence. Employing the same standard, I agree that the court did not abuse its discretion in sentencing defendant to six years' imprisonment on each of the two counts, but I conclude that it was an abuse of discretion to impose those sentences consecutively.

¶ 72 The Illinois Supreme Court has held that, although abuse of discretion is the most deferential standard of review, it provides "*meaningful* review" and does not amount to "rubber-stamping" the trial court's decision. (Emphasis added.) *Paul v. Gerald Adelman &*

*Associates, Ltd.*, 223 Ill. 2d 85, 99 (2006). " '[A]buse of discretion' is a legal term of art; it is not a wooden term but one of flexibility, dependent on the type of case in which it is to be applied and posture of the case when it arises." *O'Brien v. Meyer*, 281 Ill. App. 3d 832, 834 (1996) (quoting *Direx Israel, Ltd., v. Breakthrough Medical Corp.*, 952 F.2d 802, 814 (4th Cir. 1992). "[A] trial court abuses its discretion if it fails to apply the proper criteria when it weighs the facts, and our inquiry must consider both the legal adequacy of the way the trial court reached its result as well as whether the result is within the bounds of reason." *People v. Ortega*, 209 Ill. 2d 354, 360 (2004).

¶ 73 With respect to the trial court's decision to impose a six-year sentence on each of the two charges of which defendant has been convicted, the abuse of discretion standard reflects the understanding that the trial court is in a superior position "to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. I agree with the majority that the trial court acted well within its discretion at settling on a six-year sentence on each charge.

¶ 74 A trial court's decision to impose sentences consecutively is also reviewed under the abuse of discretion standard, but the question presented is a narrower one: does the record support the existence of a specific factual predicate required by statute? This narrows our inquiry in a way that our review of the underlying sentence does not.

¶ 75 The statute allowing for consecutive sentences makes clear that such sentences are the exception, not the rule. Generally, under section 5-8-4(a) of the Code (730 ILCS 5/5-8-4(a) (West 2022)), "[w]hen an Illinois court *** imposes multiple sentences of imprisonment on a

defendant at the same time ***, then the sentences *shall run concurrently* unless otherwise determined by the court." (Emphasis added) It has been said that "consecutive sentences are rarely appropriate" (*Wrice*, 140 Ill. App. 3d at 500-01) and "should be imposed sparingly" (*O'Neal*, 125 Ill. 2d at 298). This stands in stark contrast with the broad discretion a trial judge has in imposing sentence on a particular offense.

¶ 76    The supreme court's admonition that consecutive sentences should be imposed "sparingly" is consistent with the dramatic effect they have on a defendant's total term of incarceration:

> "There is no doubt that consecutive sentences are a 'greater punishment' than concurrent sentences[ citation.] We have hitherto taken note of the reality that 'a concurrent sentence is traditionally imposed as a less severe sanction than a consecutive sentence.' *Ralston v. Robinson*, 454 U.S. 201, 216, n.9 (1981) (emphasis deleted). The decision to impose consecutive sentences alters the single consequence most important to convicted noncapital defendants: their date of release from prison. For many defendants, the difference between consecutive and concurrent sentences is more important than a jury verdict of innocence on any single count: Two consecutive 10-year sentences are in most circumstances a more severe punishment than any number of concurrent 10-year sentences." *Oregon v. Ice*, 555 U.S. 160, 174 (2009) (Scalia, J., dissenting).

¶ 77    In Illinois, it would be incorrect to say that a judge has unfettered "discretion" to impose consecutive sentences because the legislature has prescribed that such discretion does not arise until a specific factual predicate is found. As applicable here, a court "may" impose consecutive sentences "if, having regard to the nature and circumstances of the offense and the

history and character of the defendant, it is the opinion of the court that consecutive sentences are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2022). It does not appear that the statute's use of word "opinion" is of consequence, as the supreme court has referred it as "the required statutory *finding*." (Emphasis added.) *People v. Hicks*, 101 Ill. 2d 366, 374 (1984).

¶ 78        In other settings where the trial court's ability to impose consecutive sentencing relies on a gateway factual determination, review of that factual determination is made under the manifest weight standard. See *People v. Arrington*, 297 Ill. App. 3d 1, 5 (1998) (finding of a "single course of conduct" for purposes of imposing consecutive sentences is one of fact reviewed under the manifest weight standard); *People v. Schneider*, 2024 IL App (4th) 230524-U, ¶ 46 (same holding). The issue here is more in the nature of a prediction of a future fact, *i.e.*, defendant's likelihood of offending in the future, and I note that the supreme court employed manifest weight review in an analogous circumstance. See *People v. Morgan*, 2025 IL 130626, ¶ 54 (unless proceeding on a proffer, review of a trial court's determination on pretrial detention—which includes assessment of the danger the defendant may pose to others—is reviewed under the manifest weight standard, not abuse of discretion).

¶ 79        In this context, however, supreme court precedent is clear: the decision to impose consecutive sentences is reviewed for abuse of discretion. *O'Neal*, 125 Ill. 2d at 298. Still, while we examine the trial court's determination in this regard under the abuse of discretion standard, we do so with the understanding that it is not the same wide-ranging, multifactorial decision to be made in choosing a sentence within the statutory range for each charge. The question is narrowly focused on the single predicate justifying the imposition of consecutive sentences: whether the trial court acted within its discretion in determining that "consecutive sentences are required to

protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2022). Indeed, instead of expanding the trial court's discretion, the statute in question has been construed as "a limitation on the discretion of the sentencing court to impose consecutive sentences." *People v. Cooper*, 239 Ill. App. 3d 336, 358 (1992).

¶ 80   The first factor the trial court may consider in this context is defendant's prior criminal history. Here, the record shows that he was 20 or 21 years old at the time of the events in question and had no prior criminal history. The court may also consider defendant's character, but the record shows no diagnosed pathology to suggest that he poses a risk of future misconduct greater than any other person convicted of the sordid offenses at issue. In fact, Dr. Carich evaluated defendant to be "in the very low to low-risk category to reoffend" and felt he was "not a threat to anyone in the community." Dr. Carich further noted the following concerning defendant:

"His sexual interest appears to be within the normal range, with a heterosexual preference. [He] currently does not exhibit evidence of sexual entitlement beliefs that are commonly associated with sexual aggression. He does not utilize the internet to seek out children or teens.

\* \* \*

\*\*\* [Defendant] does not have a pattern of ongoing offending. He does not exhibit a paraphilia or deviant offense related sexual interest. He does not seek male or female children or teens for sexual gratification or fulfillment. [He] presents without sexual[ ] preoccupation."

¶ 81   Of course, the trial court was free to assign little weight or no weight to Dr. Carich's opinions. The court was also free to assign little or no weight to the risk assessment tool, which scored defendant as having an "average" risk of reoffending, or the dynamic risk factors, which

placed him at a "low to very low" risk. Disregarding this evidence, however, would leave the record devoid of any other evidence specifically bearing on the risk that defendant will reoffend after his incarceration, which is obviously the key consideration when forming an "opinion *** that consecutive sentences are required to protect the public from further criminal conduct by the defendant." 730 ILCS 5/5-8-4(c)(1) (West 2022).

¶ 82 Of course, the trial court also had to consider the nature and circumstances of the offense in deciding whether defendant posed a particular risk to the public. The offenses at issue arise from an act of sexual conduct, a knowing touching or fondling of the victims for purposes of sexual gratification. 720 ILCS 5/11-0.1 (West 2020). This conduct rises to the level of aggravated criminal sexual abuse because defendant was age 17 or older, the victims were under age 18, and defendant held "a position of trust, authority, or supervision" in relation to them. *Id.* § 11-1.60(f). We begin with the recognition that, even for repugnant offenses such as these, the legislature has not overridden the normal presumption that the sentences will be imposed concurrently. From this premise, we must examine whether the "nature and circumstances of the offense[s]" of this particular case support the "sparingly" utilized imposition of consecutive sentences.

¶ 83 The trial court stated that the "primary need to protect the public" arises from defendant's "protracted grooming" of the victims. By that the court appears to have meant defendant's efforts to win the victims' trust and to encourage or pressure them to submit to his criminal behavior. The inherent concern with such grooming is that it might lead to criminal acts like defendant's, but we now know that here this concern was realized, *i.e.*, defendant *committed* those criminal acts. Having been convicted of doing so, defendant is *still* presumptively entitled to serve his sentences concurrently. It is difficult to understand how the steps defendant took to secure the victims' trust make defendant a greater threat to reoffend in the future than does his abuse of

that trust in committing these crimes. Recall that holding a position of trust is an element of the offenses at issue, which makes it difficult to conclude that defendant presents some *particular* risk of reoffending.

¶ 84    Similarly, although the charges relating to defendant's solicitation of videos from the victims were dismissed, I agree that this conduct is still a proper factor for the trial court to consider in sentencing. See *People v. Banks*, 213 Ill. App. 3d 205, 215 (1991) (holding that the trial court may consider the facts and circumstances of dismissed charges when imposing sentence). However, while these are serious matters, it is unclear why they would be considered more serious than the fact that defendant was convicted of *sexual conduct* with the minors. More importantly, and more to the point at issue here, it is unclear what additional insight they give into the defendant's risk of reoffending. In this context, the question is not the punishment defendant has earned for his offenses, but, more specifically, whether he in particular poses a greater risk of reoffending that such consecutive sentences are required for the safety of the public.

¶ 85    The trial court also focused on other incidents which seem to give little insight into any future risk defendant might pose. While on pretrial release—the conditions of which the court relaxed on three instances—defendant assisted with the parking of cars at an event described as being in the nature of a county fair. As the State conceded, it had no information that defendant had any contact with minors at the event. It is difficult to see how merely *being* at an event open to the public suggests a risk of reoffending in the future. (I note that the trial court appeared to distance itself from this factor by the time it addressed reconsideration of the sentence.) Similarly, defendant's expressed desire to someday be involved in the ministry in some capacity must be viewed in light of the limitations and registration requirements that will arise as a result of his convictions and limit his future endeavors. See 730 ILCS 150/1 *et seq.* (West 2022)). As

defendant's known participation in an *adult men's* Bible study group shows, one can participate in the ministry without being in the presence of children, so this is an illusory basis on which to find defendant to be a greater risk to reoffend.

¶ 86    As noted above, the standard of review of the trial court's imposition of consecutive sentences is an abuse of discretion. I find the supreme court's decision in *O'Neal* to be instructive on how to undertake abuse of discretion review in the context of "sparingly" imposed consecutive sentences. The defendant in *O'Neal* had committed very serious offenses: murder, rape, and aggravated kidnapping. Also, unlike this case, the defendant in *O'Neal* had a significant prior criminal history; the trial court characterized him as "a career and casual armed robber." *O'Neal*, 125 Ill. 2d at 297. The trial court imposed the defendant's sentences consecutively. The supreme court concluded that, based primarily on the 19-year-old defendant's age, it was an abuse of discretion to impose his sentences consecutively. *Id.* at 301.

¶ 87    As *O'Neal* found an abuse of discretion in imposing consecutive sentences on the defendant in that case, it is also not difficult to find an abuse of discretion here. The defendant in *O'Neal* had an extensive prior criminal record, while defendant in this case had none. While defendant here is charged with serious crimes, the charges at issue in *O'Neal* were markedly more serious. The more important takeaway from *O'Neal* is its reminder that "[c]onsecutive sentences should be imposed sparingly." *Id.* at 298. If consecutive sentences are appropriate for this defendant—a 21-year-old with no prior criminal record and assessed with a risk of reoffending that is between "average" and "low to very low"—it is difficult to see any real limitation on the imposition of such sentences.

¶ 88    Compare *O'Neal* with *Stacey*, a case with offenses similar to those at issue here and in which six-year sentences were ultimately imposed on each of two charges after review. *Stacey*,

193 Ill. 2d at 210. The supreme court upheld the imposition of those sentences consecutively because "the trial court relied on defendant's prior criminal history, which included other such acts against young girls, and defendant's repeated failure at rehabilitation, to conclude that the imposition of consecutive sentences was necessary to protect the public from defendant's conduct." *Id.* It should be noted that the additional considerations that weighed in favor of consecutive sentences in *Stacey*—a prior criminal history, a history of similar acts against minors other than the two victims, and failed attempts at rehabilitation—are all absent here.

¶ 89        As the majority correctly notes, one factor we may consider in assessing whether a sentence constitutes an abuse of discretion is if it is greatly at variance with the spirit and purpose of the law. *Lee*, 2023 IL App (4th) 220779, ¶ 55; see also *O'Neal*, 125 Ill. 2d at 301 (finding that concurrent sentences of the defendant in that case "better serve[d] the spirit and purpose of the [Code]"). The legislature has made clear that consecutive sentences are the exception, not the rule. I find that it would better serve the spirit and purpose of the law—and, frankly, the letter of it—if the sentences imposed on this defendant were serve concurrently, rather than consecutively. If our review is not meaningful, we undercut the legislature's directive that concurrent sentences are the norm and the supreme court's admonition that consecutive sentences should be imposed "sparingly."

¶ 90        Consequently, while I concur in the majority's affirmance of the two six-year sentences imposed on defendant, I dissent from the affirmance of the imposition of those sentences consecutively and would modify his sentence accordingly.